# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

### No. 23-10932-C

B.B.I. DESIGN, INC.,

Plaintiff/Appellant

### VERSUS

GILMER COUNTY, GEORGIA, et al.,

Defendants/Appellees

On Appeal from The United States District Court
For The Northern District of Georgia
Case No. 2:22-CV-00224-RWS

### BRIEF OF APPELLEES

RONALD R. WOMACK
GEORGIA BAR NO. 773650

STEVEN M. RODHAM
GEORGIA BAR NO. 611404

WOMACK, RODHAM & RAY, P.C.
POST OFFICE BOX 549
LAFAYETTE, GEORGIA 30728
706/638-2234

*B.B.I. Design, Inc. v. Gilmer County, Georgia, et al.*

No. 23-10932-C

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE</u>

## <u>DISCLOSURE STATEMENT</u>

Pursuant to 11th Cir. R. 26.1-1(a)(2), the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and any other identifiable legal entities related to a party:

Association of County Commissioners of Georgia-Interlocal Risk Management
   Agency

B.B.I. Design, Inc., Plaintiff/Appellant

Connolly, John F., Counsel for Plaintiff/Appellant

Ferguson, Karleen, Defendant/Appellee

Flint, Douglas H., Counsel for Plaintiff/Appellant

Gilmer County, Georgia, Defendant/Appellee

Nock, Jackson R., Counsel for Plaintiff/Appellant

Parker, Hubert, Defendant/Appellee

Paris, Charlie, Defendant/Appellee

Rodham, Steven M., Counsel for Defendant/Appellees

*B.B.I. Design, Inc. v. Gilmer County, Georgia, et al.*

No. 23-10932-C

Romero, Xavier T., Counsel for Plaintiff/Appellant

Smith, Jim, Defendant/Appellee

Story, Richard W., District Court Judge

Wlochowski, Art, Defendant/Appellee

Womack, Ronald R., Counsel for Defendant/Appelleea

Womack, Rodham & Ray, P.C.

WOMACK, RODHAM & RAY, P.C.

*/s/ Steven M. Rodham*
GEORGIA BAR NO. 611404
COUNSEL FOR DEFENDANTS/
APPELLEES

C-2

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant requested oral argument in this matter. Appellees respectfully submit that oral argument is unnecessary. As reflected in the Appellees' response brief, the dispositive issues in this case have been authoritatively decided in the Appellees' favor. In addition, the parties have thoroughly presented the facts and legal arguments pertaining to this case in their respective briefs. As such, oral argument is unlikely to aid the Court in the decisional process. *See* Fed.R.App.P. 34(a)(2)(B)-(C).

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

    DISCLOSURE STATEMENT ................................................................ C - 1

STATEMENT REGARDING ORAL ARGUMENT ........................................... i

TABLE OF CONTENTS.................................................................................. ii

TABLE OF CITATIONS ................................................................................ iv

STATEMENT OF FACTS .............................................................................. 1

    A. Allegations of the Complaint ...................................................... 1

    B. Additional Provision of the County Ordinance........................... 7

    C. Parallel State Litigation .............................................................. 7

SUMMARY OF ARGUMENT ....................................................................... 8

ARGUMENT AND CITATIONS OF AUTHORITY ...................................... 9

I. Appellant Failed to Allege a Cognizable Procedural Due Process Claim ...... 9

    A. Basic Legal Principles.................................................................. 9

    B. Appellant Failed to Plead in Its Complaint the Absence of Adequate
    Remedies. ................................................................................. 11

    C. Exceptional Circumstances Existed to Justify Not Having a Prior
    Hearing. .................................................................................... 12

        1. Important Government Interest ......................................... 13

        2. Specialized Need for Prompt Action ................................. 13

        3. Individualized Determination........................................... 14

D. Alternatively, Two Specific Post-Deprivation Remedies Were Available to Appellant. ......................................................................... 14

    1. Administrative Remedies Process ...................................... 15

    2. Mandamus ........................................................................ 16

II. Appellant's Takings Claim Argument Fails Because There Has Never Been a Takings Claim in This Case. ........................................... 18

A. There Has Not Been a Takings Claim in This Case. ............................ 18

B. Alternatively, Appellant's Newly-Minted Exaction Taking Theory is Meritless. .............................................................................. 21

C. *Knick* and *Kessler* are Irrelevant ........................................... 22

D. The Complaint did not assert a claim that was the practical equivalent of a petition for mandamus. .................................................. 27

E. The reply brief ................................................................... 28

CONCLUSION ............................................................................. 29

CERTIFICATE OF COMPLIANCE .................................................... 30

CERTIFICATE OF SERVICE ........................................................... 31

# TABLE OF CITATIONS

## UNITED STATES SUPREME COURT

*BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) .............................................. 22-24

*Fuentes v. Shevin*, 407 U.S. 67 (1972)................................................................ 11

*Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) ........................................ 22

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ....................................................... 11

*Tull v. United States*, 481 U.S. 412 (1987) ....................................................... 22

*Williamson County Planning Commission v. Hamilton Bank of Johnson City*,

    473 U.S. 172 (1985)..................................................................................... 23

*Zinermon v. Burch*, 494 U.S. 113 (1990) .................................................... 10, 11

## FEDERAL APPEALS COURT DECISIONS

*Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000) .............................. 10, 17, 18

*Flagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte*, 559 Fed. Appx. 811

    (11th Cir. 2014) ...................................................................................... 11-12

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276 (11th Cir. 2007) ............1

*Grayden v. Rhodes*, 345 F.3d 1225 (11th Cir. 2002) ..........................................9

*Kessler v. City of Key West*, No. 21-11069, 2022 U.S. App. LEXIS 5302 (11th

    Cir. Feb. 28, 2022)........................................................................... 12, 24-26

*Knick v. Township of Scott*, 862 F.3d 310 (3d Cir. 2017)................................. 24

*McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc) ..................... 11, 14

## DISTRICT COURT DECISIONS

*Knick v. Scott Township*, No. 3:14-CV-2223, 2015 WL 6560647 (M.D. Pa. Oct. 29, 2015) ................................................................................ 23-24

## FEDERAL STATUTES

33 U.S.C. § 1319(d) ..................................................................................5

## FEDERAL RULES

Fed. R. App. P. 34(a)(2)(B)-(C) ................................................................ i

## STATE COURT DECISIONS

*Town of Flower Mound v. Stafford Estates Ltd. Partnership*, 71 S.W.3d 18 (Tex. Ct. App. 2002) ...................................................................... 21

## STATE STATUTES

O.C.G.A. § 9-6-20 ................................................................................ 17

O.C.G.A. § 12-5-20 et seq.......................................................................1

O.C.G.A. § 12-7-2 ............................................................................... 13

O.C.G.A. § 12-7-12(c)(1) ..................................................................... 15

## STATEMENT OF FACTS

### A. Allegations of the Complaint

On December 14, 2020, Appellant purchased Lot 13 in the Watersong subdivision of Gilmer County, also known as 418 Watersong Trail, Ellijay, GA 30540 (the "Property"), with the intention to build a home on the Property. Doc. 1-1 at ¶ 13. The Property is adjacent to East Mountaintown Creek, which has been designated a "trout stream" pursuant to the Georgia Water Quality Control Act (O.C.G.A. § 12-5-20 et seq.). *Id.*

On January 19, 2021, a site plan of the Property was prepared by Chastain & Associates, P.C., which, among other things, identified a line of wrested vegetation along East Mountaintown Creek. *Id.* at ¶ 15. The line of wrested vegetation on a trout stream serves as the starting point for the fifty-foot buffer area in which land-disturbing activities are prohibited pursuant to the Gilmer County Soil Erosion, Sedimentation, and Pollution Control Ordinance ("County Ordinance").[1] *Id.* In accordance with the prepared site plan and identified line of wrested vegetation, Chastain & Associates, P.C. allegedly staked

---

[1] The County Ordinance was properly considered on Appellees' Motion to Dismiss because it was referenced and quoted in Appellant's complaint, it is central to Appellant's claims, its contents are not in dispute, and it was attached to Appellees' Motion to Dismiss. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

where the home was to be built on the Property. *Id*. As such, Appellant believed it was in compliance with the Georgia Water Quality Control Act and other relevant laws and regulations. *Id*.

On April 7, 2021, Appellant was issued a building permit for the purpose of building a home on the Property and began construction on the home soon thereafter. *Id*. at ¶ 16. On May 28, 2021, officials from Gilmer County inspected the Property and the ongoing construction for the first time; however, the inspection "failed due to shallow footings." *Id*. at ¶ 17. The concrete footings of the home were then inspected by an engineer on May 31, 2021. *Id*. Following the inspection of the concrete footings, Appellant poured the concrete walls of the structure. *Id*. at ¶ 18. The concrete walls were inspected by an engineer on June 10, 2021. *Id*. On August 26, 2021, Appellant entered into a contract for sale of the Property with an intended closing date of April 15, 2022. *Id*. at ¶ 19.

On January 22, 2022, at the alleged request of Gilmer County, the Property was surveyed by Chastain & Associates, P.C. *Id*. at ¶ 20. That survey alleged that ninety-eight (98) square feet of the enclosed structure being built on the Property and one support post for the structure's porch were located in the buffer area, as measured fifty (50) feet from the line of wrested vegetation

along East Mountaintown Creek, required by the Ordinance.[2] *Id.*

On February 9, 2022, Appellant received a stop-work order from Gilmer County at the Property, instructing Appellant to contact Gilmer County Planning & Zoning for compliance information.[3] *Id.* at ¶ 21. The stop-work order prohibited Appellant from performing any work on the Property except those actions remedying any violations of law giving rise to the stop-work order. *Id.*

On February 18, 2022, Appellant received a notice of violation from Gilmer County alleging that Appellant had violated the Gilmer County Soil Erosion, Sedimentation and Pollution Control Ordinance (and its corresponding state law Georgia Erosion and Sedimentation Act (GESA)) in four different respects:

a. Structure built in buffer;

---

[2] "There is established a 50 foot buffer as measured horizontally from the point where vegetation has been wrested by normal stream flow or wave action, along the banks of any state waters classified as "trout streams" pursuant to Article 2 of Chapter 5 of Title 12, the 'Georgia Water Quality Control Act', ...." County Ordinance at Sec. IV (Minimum Requirements for Erosion, Sedimentation and Pollution Control Using Best Management Practices) ¶ C.16.

[3] According to the County Ordinance, "When a violation in the form of ... failure to maintain a stream buffer, ... a stop work order shall be issued by the Local Issuing Authority or by the Director or his or her Designee. All such stop work orders shall be effective immediately upon issuance and shall be in effect until the necessary corrective action or mitigation has occurred. Such stop work orders shall apply to all land-disturbing activity on the site with the exception of the installation and maintenance of temporary or permanent erosion and sediment controls." County Ordinance at Sec. VII (Penalties and Incentives) ¶ B.4.

      b. Disturbance in the buffer, with concrete overpour 35 feet from state waters;

      c. Silt fences down and not maintained, double row required facing state waters; and

      d. Bare ground remains uncovered since start of job.

*Id*. at ¶ 22.

The notice of violation provided a compliance deadline of March 18, 2022. *Id*. at ¶ 23. Appellant made good faith efforts to remedy the alleged violations of the Ordinance before the compliance deadline and notified Gilmer County of Appellant's compliance with the law on March 18, 2022. *Id*. at ¶ 24.

On March 30, 2022, Gilmer County Attorney, David Clark, Gilmer County Code Enforcement Officer, Art Wlochowski, Georgia Department of Natural Resources Environmental Compliance Specialist, Tracy Feltman, and Gilmer County Post 1 Commissioner, Hubert Parker inspected the Property. *Id*. at ¶ 25.

On April 11, 2022, Appellant received a letter from David Clark, Gilmer County Attorney, regarding Appellant's good faith efforts to remedy the alleged violations of the Ordinance. *Id*. at ¶ 26. The letter informed Appellant that "as to Item 2" of the alleged violations listed in Paragraph 17, "[t]here is a fine of

$2500 per day for every day that the violation has occurred"[4] and that "[a]ssuming we consider the date of this letter as the ending period for the calculation of the fine, the fine would be $2500/per day multiplied by 315 elapsed days and totaling $787,500," but that "the County is willing to negotiate a reduction of the fine." *Id*. The letter also informed Appellant that, according to the State of Georgia officials working with Gilmer County, Gilmer County "does not have the authority to grant a variance as to the structure being built in the buffer." *Id*.

After multiple telephone conferences and electronic communications between Gilmer County officials and Appellant attempting to resolve the issue, on June 27, 2022, Appellant received an email, through counsel, stating that Gilmer County's position on the notice of violation remained twofold-a fine of Three Hundred Thousand Dollars ($300,000.00) and a consent order between Appellant and the State of Georgia allowing the structure on the Property to

---

[4] The County Ordinance provides as follows: "Any person who violates any provisions of this ordinance, or any permit condition or limitation established pursuant to this ordinance, or who negligently or intentionally fails or refuses to comply with any final or emergency order of the Director issued as provided in this ordinance shall be liable for a civil penalty not to exceed $2,500.00 per day. … Each day during which violation or failure or refusal to comply continues shall be a separate violation." County Ordinance at Sec. VII (Penalties and Incentives) at ¶ D.1. Appellees note that the federal Clean Water Act authorizes a civil penalty of up to $25,000 per day for each violation. *See* 33 U.S.C. § 1319(d).

remain in the fifty-foot buffer zone, but prohibiting any future land-disturbing

activities within the buffer zone on the Property. *Id.* at ¶ 27.

The County Ordinance provides that:

"Any person who violates any provisions of this article, or any per-
mit condition or limitation established pursuant to this article, or
who negligently or intentionally fails or refuses to comply with any
final or emergency order of the director issued as provided in this
article shall be liable for a civil penalty not to exceed $2,500.00 per
day. For the purpose of enforcing the provisions of this article, not-
withstanding any provisions in any city charter to the contrary,
municipal courts shall be authorized to impose penalty not to ex-
ceed $2,500.00 for each violation. Notwithstanding any limitation
of law as to penalties which can be assessed for violations of county
ordinances, any magistrate court or any other court of competent
jurisdiction trying cases brought as violations of this article under
county ordinances approved under this article shall be authorized
to impose penalties for such violations not to exceed $2,500.00 for
each violation."

*Id.* at ¶ 28 (quoting County Ordinance at Sec. VII (Penalties and Incentives) ¶

D.1.).

Appellant has not been issued a citation nor has been noticed to appear

before any municipal court, magistrate court, or any other court of competent

jurisdiction to answer for Appellant's alleged violations of the Ordinance; how-

ever, the stop-work order remains in effect and the notice of violation has not

been resolved. *Id.* at ¶ 29. Nonetheless, Gilmer County has sought to enforce

Appellant's alleged violation through fines and other measures without provid-

ing Appellant any ability to challenge the County's accusations in court and

6

without any due process. *Id*.

## B. Additional Provision of the County Ordinance

The County Ordinance further provides that

The suspension, revocation, modification or grant with condition of a permit by the Local Issuing Authority upon finding that the holder is not in compliance with the approved erosion, sediment and pollution control plan; or that the holder is in violation of permit conditions; or that the holder is in violation of any ordinance; shall entitle the person submitting the plan or holding the permit to a hearing before the Magistrate Judge within 30 days after receipt by the Local Issuing Authority of written notice of appeal.

Any person, aggrieved by a decision or order of the Local Issuing Authority, after exhausting his administrative remedies, shall have the right to appeal denovo to the Superior Court of Gilmer County.

County Ordinance at Sec. IX (Administrative Appeal Judicial Review) at ¶¶ A., B.

From the allegations of the complaint, it does not appear that Appellant filed any notice of appeal or seeks to institute any other process.

## C. Parallel State Litigation

The District Court remanded Counts I and II to the superior court. That portion of the District Court's Order has not been appealed. These claims are proceeding in the Gilmer County Superior Court. In Count I, the state law declaratory judgment claim, Appellant is seeking a declaratory judgment "that Appellee Gilmer County has failed to enforce its Ordinance according to the

enforcement procedures described therein, that it has failed to provide due process to Appellant, and that it must provide to Appellant legal recourse as required by the U.S. Constitution, Georgia Constitution, the subject Gilmer County ordinances, and other applicable federal, state, and local laws." Doc. 1-1 at ¶ 40. In Count II, the state law injunctive relief claim, Appellant is seeking an injunction to "maintain the status quo" pending adjudication of the remaining claims. Doc. 1-1 at ¶ 42.

## SUMMARY OF ARGUMENT

1. Appellant has not plausibly alleged a procedural due process claim. To do so, Appellant must allege that no State remedies were available to rectify the alleged deprivation of due process by the County. Appellant did not do so in its complaint. Although there were exceptional circumstances excusing a hearing before issuing the stop work order and notice of violation, there were two post-deprivation remedies available to Appellant whereby it could have challenged those decisions: the administrative remedies process of the County Ordinance and the writ of mandamus under Georgia law. Appellant utilized neither. The mere availability of these procedures render Appellant's procedural due process claim meritless.

2. Put simply, Appellant has never alleged a takings claim in this case. Such a claim is not alleged in the complaint, this case has been litigated as a

8

procedural due process case and not a takings case, and Appellant did not try to assert a takings claim until its motion for reconsideration following the entry of judgment against it. Even if Appellant's complaint had asserted a takings claim, Appellant's takings theory, an exaction taking, fails to state a claim. The County did not exact anything from the Appellant in order for Appellant to obtain its permit. Rather, Appellant was assessed a civil penalty for Appellant's violations of the stream buffer and the County Ordinance. For that and other reasons, this case is distinguishable from *Knick v. Township of Scott* and *Kessler v. City of Key West*. The District Court correctly dismissed the Appellant's complaint and this Court should affirm that decision.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. Appellant Failed to Allege a Cognizable Procedural Due Process Claim

#### A. Basic Legal Principles

"In [the Eleventh Circuit], a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2002) (citation omitted). Solely for purposes of this appeal, Appellees will assume elements one and two are true.

9

"[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A procedural due process violation is therefore not complete "unless and until the State fails to provide due process." *Id.* at 126. "This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to 'remedy the procedural failings of its subdivisions and agencies in the appropriate fora--agencies, review boards, and state courts' before being subjected to a claim alleging a procedural due process violation." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (citations omitted).

To determine what process was "due" in a given situation, "it is necessary to ask what process the state provided, and whether it was constitutionally adequate." *Zinermon*, 494 U.S. at 126. In doing so, this Court is to consider several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Typically, the Constitution requires some kind of hearing before the State deprives a person of liberty or process. *Zinermon*, 494 U.S. at 127. "Extraordinary circumstances," however, may justify dispensing with the prior hearing. Those circumstances are characterized by

> (1) the seizure of property is necessary to secure an important governmental or general public interest; (2) there is a special need for prompt action; and (3) the person initiating the seizure is a government official responsible for determining, under the standards of a narrowly drawn statute, that the seizure was necessary and justified in the particular instance.

*Fuentes v. Shevin*, 407 U.S. 67, 91 (1972).

In addition, "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc).

## B. Appellant Failed to Plead in Its Complaint the Absence of Adequate Remedies.

In this case, Appellant failed to allege in its complaint that there were *no* state remedies available to rectify the alleged deprivation of due process by the County. This is fatal to its procedural due process claim. *Flagship Lake*

11

*Cnty. Dev. No. 5, LLC v. City of Mascotte*, 559 Fed. Appx. 811, 814 (11th Cir. 2014). Indeed, like the plaintiffs in *Kessler v. City of Key West*,

> the [Appellant] alleged no facts showing that [it] asked for reme-
> dial procedures, that the state refused to make available such pro-
> cedures, or that the state's procedures were otherwise unavailable
> or inadequate to remedy the alleged procedural deprivation. Nor
> [has it] addressed the adequacy of state remedies on appeal, in-
> stead claiming [it was] not required to exhaust such remedies. But
> whether [it] attempted to avail [itself] of state remedies or not, the
> dispositive question is whether those remedies were available.

*Kessler v. City of Key West*, No. 21-11069, 2022 U.S. App. LEXIS 5302, at *9 (11th Cir. Feb. 28, 2022)

On the other hand, the complaint herein specifically alleges that the County failed to utilize an available procedure that would have allowed Appellant to challenge the stop-work order and the notice of violation.[5] Doc. 1-1 at ¶¶ 28-29, 37-40. By alleging the existence of an available procedure, the complaint fails to allege a violation of Appellant's procedural due process rights.

## C. Exceptional Circumstances Existed to Justify Not Having a Prior Hearing.

Exceptional circumstances justified issuance of the stop-work order and

---

[5] Appellant relies on County Ordinance at Sec. VII (Penalties and Incentives) at ¶ D.1., as the source for the procedure it was allegedly denied by the County. A plain reading of that provision shows it does not contain any procedure at all. It merely provides for the assessment of a civil penalty of a specific amount per day per violation and gives jurisdiction to magistrate court to impose penalties of that daily amount for violations of the County Ordinance.

12

notice of violation without a prior hearing. The stop-work order and notice of violation satisfied the *Fuentes* criteria for exceptional circumstances.

### 1. Important Government Interest

Seizing the property through the stop-work order served an important interest. The Georgia General Assembly declared in the Erosion and Sedimentation Act of 1975:

> It is found that soil erosion and sediment deposition onto lands and into waters within the watersheds of this state are occurring as a result of widespread failure to apply proper soil erosion and sedimentation control practices in land clearing, soil movement, and construction activities and that such erosion and sediment deposition result in pollution of state waters and damage to domestic, agricultural, recreational, fish and wildlife, and other resource uses. It is therefore declared to be the policy of this state and the intent of this chapter to strengthen and extend the present erosion and sediment control activities and programs of this state and to provide for the establishment and implementation of a state-wide comprehensive soil erosion and sediment control program to conserve and protect the land, water, air, and other resources of this state.

O.C.G.A. § 12-7-2.

The stop-work order was issued in furtherance of this policy because Appellant's Ordinance violations were endangering the East Mountaintown Creek, which is a "trout stream."

### 2. Specialized Need for Prompt Action

There was a specialized need for the County's action. Ninety-eight

13

square feet of the residence had been built inside the stream buffer, land disturbance activities had occurred in the stream buffer, and concrete had been poured insider the stream buffer. Doc. 1-1 at ¶ 22. An immediate stop-work order was necessary to stop these activities and prevent further similar activities from occurring.

### 3. Individualized Determination

A decision specific to the subject property was made by a government official applying the criteria set forth in the County Ordinance.

**\* \* \***

Based on the above, exceptional circumstances existed in this case to justify issuing the stop-work order and notice of violation without first holding a hearing. The lack of a prior hearing did not violate Appellant's due process rights.

## D. Alternatively, Two Specific Post-Deprivation Remedies Were Available to Appellant.

Even if this Court finds that exceptional circumstances were lacking in this case, "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney*, 20 F.3d at 1557. Two specific post-deprivation procedures were available to Appellant to challenge the stop-work order

14

and the notice of violation, thus defeating its due process claim.

### 1. Administrative Remedies Process

The County Ordinance has an administrative remedies provision that provides a procedure for those in a position similar to that of Appellant. The County Ordinance at Sec. IX (Administrative Appeal Judicial Review) at ¶ A., applies to stop-work orders. That section provides as follows:

> *Administrative remedies*. The suspension, revocation, modification or grant with condition of a permit by the local issuing authority upon finding that the holder is not in compliance with the approved erosion, sediment and pollution control plan; or that the holder is in violation of permit conditions; or that the holder is in violation of any ordinance; shall entitle the person submitting the plan or holding the permit to a hearing before the magistrate judge within 30 days after receipt by the local issuing authority of written notice of appeal.

Appellant was required to follow this procedure because the stop-work order suspended the Appellant's land-disturbing permit. The "permit" that section addresses is "The authorization necessary to conduct a land-disturbing activity under the provisions of" the County Ordinance." *See* County Ordinance at Sec. II (Definitions) at ¶ 32. A stop-work order requires that "land-disturbing activities be stopped until necessary corrective action or mitigation has occurred[.]" O.C.G.A. § 12-7-12(c)(1), *see also* County Ordinance at Sec. VII (Penalties and Incentives) at ¶ B.1 ("shall issue a stop-work order requiring that land-disturbing activities be stopped until necessary corrective action or

mitigation has occurred"). Thus, by definition, a stop-work order suspends a land-disturbing permit. Since the stop-work order suspended Appellant's ability to operate under its permit, Appellant was entitled to invoke the procedure of County Ordinance at Sec. IX (Administrative Appeal Judicial Review) at ¶ A.

In addition, Appellant was required to follow this procedure because the stop-work order and notice of violation indicated that Appellant was in violation of permit conditions and that Appellant was in violation of the County Ordinance. Appellant's acknowledgement that part of the residence was built within the 50-foot buffer was a sufficient acknowledgement that it violated the Ordinance. *See* County Ordinance at Sec. IV (Minimum Requirements for Erosion, Sedimentation and Pollution Control Using Best Management Practices) at ¶ C.16.

Accordingly, Appellant was required to follow the Administrative Remedy. But, Appellant did not make use of that remedy, thus defeating its due process claim.

### 2. Mandamus

The District Court found that Appellant failed to utilize the available procedure of mandamus. By statute, "All official duties should be faithfully performed, and whenever, from any cause, a defect of legal justice would ensue

16

from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights[.]" O.C.G.A. § 9-6-20. As the District Court stated,

> In particular, "Georgia law provides that a party may seek a writ of mandamus when no other specific legal remedy is available and a party has a clear legal right to have a certain act performed." "This procedure can be used to compel a governmental body to act in compliance with the law, for instance to require a governmental board to hold a hearing as provided by law."

Doc. 14 at 16-17 (citations omitted).[6]

If the County was denying Appellant a procedure to which it was entitled, Appellant could have sought a writ of mandamus from superior court to compel the County to provide that procedure. That being the case, Appellant's procedural due process claim fails as a matter of law.

For example, In *Cotton*, the plaintiff was terminated after his employer, a state university, found that the plaintiff had violated the university's sexual harassment policies. 216 F.3d at 1329. The plaintiff asked the university and the Board of Regents to hold a hearing regarding his termination, but both

---

[6] Appellant asserts multiple times in its brief that the District Court assumed that Appellant "was correct in arguing that no other specific legal remedies are available to [it]". Appellant's Br. at 11, 15, 20, 23. However, that statement is absolutely wrong. Instead of being the District Court's assumption, it was language from a quote in a parenthetical from *Cotton v. Jackson*. *See* Doc. 14 at 16.

17

entities denied this request. *Id*. at 1329-30. The plaintiff sued the university president and members of the Board of Regents in federal court under § 1983, alleging that the defendants' refusal to afford him a hearing was a violation of procedural due process. *Id*. at 1330.

This Court held that the plaintiff's procedural due process claim failed as a matter of law because the plaintiff could have pursued a writ of mandamus in state court. *Id*. at 1332-33. "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Id*. This Court concluded in *Cotton* that "because adequate state remedies were available to provide plaintiff with the opportunity for a … hearing, he has failed to state a procedural due process claim." *Id*. at 1330.

Likewise, Appellant has failed to state a procedural due process claim.

## II. Appellant's Takings Claim Argument Fails Because There Has Never Been a Takings Claim in This Case.

### A. There Has Not Been a Takings Claim in This Case.

Simply put, there has never been a takings claim in this case. The suggestion of a takings claim did not arise until Appellant's motion for reconsideration after judgment was entered against it and then in Appellant's brief to this Court. Prior to the District Court's entry of judgment against it, this case

18

had been litigated as a procedural due process case. Consider the following, as
pointed out by the District Court:

- Appellant's Complaint never mentioned the Fifth Amendment at
  all.

- Appellant alleged both the Georgia and Federal Constitutions pro-
  hibit the state from depriving anyone of life, liberty, or property
  without due process of law. Doc. 1-1 at ¶ 52.

- Appellant alleged when property rights are involved, due process
  of law as guaranteed by the Federal and State Constitutions in-
  cludes notice and a hearing as a matter of right. *Id*. at ¶ 53.

- Appellant alleged Appellee[s] deprived Appellant of all economic
  use of its property without adequate procedures or any opportunity
  for a hearing through [their] failure to enforce [Appellee Gilmer
  County's] Ordinance according to the enforcement procedures
  therein, …. *Id*. at ¶ 64.

- Appellant alleged Appellant's Property continues to be affected by
  a stop-work order, rendering it devoid of any economic use, and
  Appellant has not had any opportunity to be heard before a neutral
  decisionmaker …. *Id*. at ¶ 66.

- Appellant alleged as a result of Appellees' denial of any

19

opportunity to be heard, through Appellees' refusal to follow the enforcement procedures in the Ordinance, Appellant has no state law or administrative procedure available to remedy the deprivation of its property interest. *Id.* at ¶ 67.

- Appellant alleged the acts of Appellees … deprived Appellant of the privileges and immunities guaranteed to [it] … by Amendment VIII and Section I of Amendment XIV of the Constitution …. *Id.* at ¶ 68.

- Though they mention Appellant's property rights and the economic use of Appellant's property, Appellant's allegations clearly focus on the perceived inadequacy of the process afforded to it, not the government's taking or regulation of its property without payment.

- In response to Appellees' motion to dismiss that Appellant had not asserted a viable procedural due process claim, Appellant could have sought leave to amend its complaint and clarify its claims or, at the least, made that clarification in its response brief. But it did neither, instead arguing that it did in fact adequately allege a procedural due process claim and never once mentioning any takings claim. *See* Doc. 5.

Doc. 22 at 5-7.

20

Based on a simple review of the complaint and the way this case has been litigated in the lower court, there has never been a takings claim in this case.

## B. Alternatively, Appellant's Newly-Minted Exaction Taking Theory is Meritless.

Appellant now claims in this Court it has been the victim of an exaction taking. The facts, even at this early stage of the proceedings, do not bear that out. "In an exaction takings case, the landowner is not simply denied or restricted in some desired use of his property. Rather, in an exaction takings case, some action—the exaction—is required of the landowner *as a condition to obtaining governmental approval.*" *Town of Flower Mound v. Stafford Estates Ltd. Partnership*, 71 S.W.3d 18, 30 (Tex. Ct. App. 2002) (emphasis supplied). That is certainly not the case here. Appellant has not alleged that any conditions were placed on it obtaining its land disturbance permit from the County. That is, nothing was exacted of Appellant for Appellant to get its land disturbance permit. What Appellant claims is the exaction is *Appellant being assessed a civil penalty* for its admitted permit and County Ordinance violations.

It is simply illogical for Appellant to incur a civil penalty through its wrongful conduct and then turn around and say that civil penalty is a taking for which Appellant is entitled to just compensation. If this were true,

enforcement of environmental ordinances would simply be impossible. Civil penalties serve policies such as deterrence and punishment. *See Tull v. United States*, 481 U.S. 412, 422-23 (1987) (discussing civil penalties under Clean Water Act). Civil penalties do not fit the takings paradigm.[7]

Appellant's position is also rather audacious. By seeking to have the civil penalty declared a taking and seeking damages for same, Appellant is trying to avoid any and all responsibility for its admitted County Ordinance violations and it is trying to get the County to *reimburse* it for its wrongful conduct. Appellant cited no law in support of its position that a civil penalty imposed for wrongful conduct is a taking. That is because Appellant's position is legally baseless.

## C. *Knick* and *Kessler* are Irrelevant

Appellant relies very heavily on *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), and *Kessler*, *supra*. A review of *Knick* and *Kessler* is necessary to show their complete inapplicability to this case. In *Knick*, the Supreme Court faced the issue of whether a person had to litigate in state court a claim for

---

[7] Appellees are not asserting that there are no constitutional limitations on civil penalties. They may be subject to due process limitations as punitive damages are, *see BMW of N. Am. v. Gore*, 517 U.S. 559 (1996), or they may be limited by the Excessive Fines Clause. Those issues are not before this Court in this case, *see* U.S. Const. amend VIII.

inverse condemnation before having the right to file a takings claim in federal court pursuant to § 1983, as had previously been required under *Williamson County Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). In *Knick*, the plaintiff owned property that included a small family graveyard closed to the public. 139 S. Ct. at 2168. In 2012, Scott Township passed an ordinance mandating that cemeteries, whether on public or private property, "be kept open and accessible to the general public during daylight hours" and authorizing the township's code enforcement officer "to 'enter … property' to determine the existence and location of a cemetery." *Id*. (citation omitted). The township's code enforcement officer inspected the plaintiff's property and issued a notice of violation. *Id*.

The plaintiff sought declaratory and injunctive relief in state court against enforcement of the ordinance, but she did not file an inverse condemnation proceeding. *Id*. The municipality stayed the proceedings against the plaintiff after she filed her suit. *Id*. The state court found that, because the enforcement action had ceased, the plaintiff "could not demonstrate the irreparable harm necessary for equitable relief." *Id*.

The plaintiff then filed a § 1983 suit in federal court, seeking damages for the taking of her property for public use without just compensation in violation of the Fifth Amendment. *Knick v. Scott Township*, No. 3:14-CV-2223,

23

2015 WL 6560647, at *3 (M.D. Pa. Oct. 29, 2015). The district court dismissed her takings claim without prejudice, instructing the Plaintiff to first pursue an inverse condemnation action pursuant to *Williamson County*. *Id.* at *4-6 (M.D. Pa. Sept. 8, 2016). The court of appeals affirmed. *Knick v. Township of Scott*, 862 F.3d 310, 314 (3d Cir. 2017).

The Supreme Court reversed. *Knick*, 139 S. Ct. at 2167. The Court held that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.* at 2167. Thus, he "may bring his claim in federal court under § 1983 at that time." *Id.* at 2168. In so doing, the Court overruled *Williamson County*'s state-litigation requirement.

Likewise, in *Kessler*, this Court was faced with the dismissal of the plaintiffs' actually asserted takings claim. In that case, between 2004 and 2017, the plaintiffs' primary residence was a floating home docked at a marina operated by the City in a community of about 100 floating homes. 2022 U.S. App. LEXIS 5302 *2. The plaintiffs leased their spot at the marina—a "boat slip"—from the City. They filed suit against the City claiming that the City unreasonably escalated a minor code violation relating to their floating home, abused the legal process to terminate the lease and get rid of them, and indirectly caused the loss of their home. *Id.*

24

The alleged code violation arose in 2016, when a contractor hired by the City notified the City of safety concerns related to "numerous barrels loosely secured" to the underside of the plaintiffs' floating home. *Id.* at \*2-3. The City determined that this setup violated the City Code. *Id.* at \*3. After informal attempts to resolve the matter with the plaintiffs failed, the City gave notice of an administrative hearing before a special magistrate. *Id.*

The City determined that the plaintiffs' floating home violated the City Code. *Id.* The City filed a complaint in state court to evict the plaintiffs based on the code violation. For reasons not pertinent to this case, the City voluntarily dismissed its complaint. *Id.* at \*3-4.

In September 2017, the Lower Keys and Key West were struck by Hurricane Irma. *Id.* at \*4. By that time, the plaintiffs had voluntarily removed the loosely secured barrels—what they called "safety reserve floatation"—from under their home. *Id.* Nevertheless, unlike many other floating homes at the marina, the plaintiffs' home survived the storm with minimal damage. *Id.* But, in December 2017, it was struck by a large piece of floating debris and sunk. *Id.* The plaintiffs believed their home would not have sunk had the City not "intimidated" them into removing the reserve floatation. *Id.*

After dismissing the eviction case, the City gave notice that it intended to terminate the plaintiffs' lease. *Id.* Contrary to representations made at the

25

hearing, the City Manager issued a decision terminating the lease. *Id*. at *5. The City shut down the plaintiffs' utility accounts for the boat slip, removed the plaintiffs' remaining personal property, and gave the boat slip to a new tenant. *Id*.

The plaintiffs sued the City and various City officials in federal district court. *Id*. They asserted, *inter alia*, a procedural due process claim and a takings claim. *Id*. The district court granted the defendants' motion to dismiss for failure to state a claim. In relevant part, the court concluded that the plaintiffs failed to state a procedural-due-process or takings claim because they did not pursue state remedies or plead how those remedies were inadequate. *Id*. at *6-7; *see supra* at 12 (quoting *Kessler*). This Court reversed the dismissal of the takings claim, ruling based on *Knick*, that plaintiffs were not required to take their takings claim first to state court before proceeding to federal court.

*Knick* and *Kessler* are inapplicable to this case. In both *Knick* and *Kessler* the plaintiffs plainly asserted takings claims, in conjunction with other claims. Indeed, the Kesslers asserted both a takings claim and a procedural due process claim. Relatedly, those takings claims did not have to be divined from a counsel-crafted complaint that plainly asserted a procedural due process claim. Third, neither *Knick* nor *Kessler* involved allegations where the alleged taking was a civil penalty imposed for wrongful conduct. Fourth, in this case, the

26

District Court's ruling was not based on a failure to exhaust theory like *Knick* and *Kessler*. Instead, the lower court in this case ruled that Appellant's procedural due process cause of action never accrued because available state remedies existed. That theory is entirely different from that at issue in *Knick* and *Kessler*.

## D. The Complaint did not assert a claim that was the practical equivalent of a petition for mandamus.

Appellant argues that since its complaint sought the same relief it would have sought through mandamus that the complaint served the same purpose as a mandamus petition. Appellant's Br. at 25-26. That argument is meritless. First, it ignores the rationale of the District Court's ruling. The District Court ruled that Appellant did not have a procedural due process claim because of the mere *availability* of the mandamus procedure under Georgia law, not because Appellant failed to assert that claim. That is, if Appellant wanted to force the County to hold a hearing, Appellant was required to file a petition for mandamus in superior court, not go to federal court and seek similar relief.

Second, Appellant then relies on the fact that it asserted claims for declaratory and injunctive relief to show it sought similar relief to that available in a mandamus action. But Appellant's claims for declaratory and injunctive relief were brought pursuant to state law, were remanded to state court at

Appellant's request, because the District Court did not have jurisdiction over those claims. That left Appellant's § 1983 claim, which did not include a request for injunctive relief. Thus, the claims that supposedly sought similar relief to a mandamus action were no longer part of the case. What would have been the jurisdictional basis for this mandamus-esque claim? There is no such statute identified in the complaint.

## E. The reply brief

Appellant complains that the mandamus argument was raised by Appellees for the first time in their reply brief. Appellant's Br. at 26. This deprived Appellant of an opportunity to respond and it should not have been considered by the District Court. Conceding that the mandamus argument was not raised by Appellees until their reply brief, *Appellant* quotes a portion of the District Court's order that undermines its entire argument: "Nor did Plaintiff mention the remedy in its opposition brief *or seek leave to respond to Defendants' reply brief* when Defendants raised the same point." Doc. 14 at 17 (emphasis supplied). In fact, Appellant has not objected to Appellees' alleged misconduct until its brief to *this Court*. It did not even complain about it in its motion for reconsideration. It is also a little ironic that Appellant is criticizing Appellees for raising the mandamus argument for the first time in their reply brief when it was Appellant who did not raise its takings claim until its motion for

28

reconsideration.

## **CONCLUSION**

Based upon the above and foregoing and the entire record in this matter, this Court should affirm the district court's grant of judgment in Defendants' favor.

RESPECTFULLY SUBMITTED,

WOMACK, RODHAM & RAY, P.C.

*/s/ Ronald R. Womack*
GEORGIA BAR NO. 773650

*/s/ Steven M. Rodham*
GEORGIA BAR NO. 611404

P.O. BOX 549
LAFAYETTE, GEORGIA 30728
(706) 638-2234

COUNSEL FOR DEFENDANTS/
APPELLEES

29

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B). This brief has been printed with the type face font "Century Schoolbook 13 cpi" and contains 6,584 words.

*/s/ Steven M. Rodham*
GEORGIA BAR NO. 611404

WOMACK, RODHAM & RAY, P.C.
P.O. BOX 549
LAFAYETTE, GEORGIA 30728
706/638-2234

OF COUNSEL FOR DEFENDANTS/
APPELLEES

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on June 2o , 2019, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which served a copy of same on all counsel of record in this case.

/s/ Steven M. Rodham
GEORGIA BAR NO. 611404

WOMACK, RODHAM & RAY, P.C.
P.O. BOX 549
LAFAYETTE, GEORGIA 30728
706/638-2234

OF COUNSEL FOR DEFENDANTS/
APPELLEES

31